IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| J. ALAN KUGLE, as Trustee in Dissolution for C. BREWER AND COMPANY, LIMITED, a Hawai`i corporation in dissolution, J. ALAN KUGLE as Trustee in Dissolution for BREWER ENVIRONMENTAL INDUSTRIES HOLDINGS, INC., a Hawai`i limited liability company, and J. ALAN KUGLE, as Trustee in Dissolution for BREWER ENVIRONMENTAL INDUSTRIES LLC, a terminated Hawai`i limited liability company, | ) ) ) ) ) ) ) ) ) ) ) ) ) | CV NO 09-00351 DAE BMK |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | |
| ISLAND CEMENT, LCC, CHARLES LEE HARLAN, ROSE MARIE ORNELLAS HARLAN, DAVID KNITTLE, KEVIN BALOG, AND DEBORAH DE LUZ-BALOG, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) ) ) | |
| _____ | ) | |

ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT AND GRANTING PLAINTIFFS' COUNTER-MOTION
<u>FOR SUMMARY JUDGMENT</u>

On October 1, 2010, the Court heard Defendants Kevin Balog,

Bedorah De Luz- Balog, and David Knittle's ("the Guarantors") Motion for

Summary Judgment and the Plaintiffs, Trustees of the Estate of Bernice Pauahi

Bishop's ("Kamehameha Schools" and/or "KS"), Counter-Motion for Summary

Judgment.  William M. Tam, Esq., appeared on behalf of Kamehameha Schools

and Gary W. Vancil, Esq., appeared on behalf of the Guarantors.  On October 25,

2010, this Court again heard the parties' Motions for Summary Judgment.  Paul

Alston, Esq., and Mei-Fei Kuo, Esq., appeared on behalf of the Plaintiffs and Gary

W. Vancil, Esq., and Albert S. Albrechtson, III, Esq., appeared on behalf of the

Guarantors and Island Cement, LLC ("Island Cement" and/or  "IC").

This case stems out of contractual interactions between four primary

parties. KS is a substitute plaintiff for Brewer Environmental Industries Holdings,

Inc., Brewer Environmental Industries, LLC, and C. Brewer and Company, Ltd.

(collectively, "Brewer").  Brewer initiated this lawsuit against the Island Cement

and the Guarantors (collectively "the Defendants") on July 27, 2009.

2

At issue here is the applicability of a 2007 Settlement Agreement and Assignment of Lease between Brewer and Island Cement.  In its Complaint, Brewer claimed relief under theories of Breach of Contract, Indemnification and Contribution, Indemnification and Contribution under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA") and the Hawai'i Environmental Response Law ("HERL"), Unjust Enrichment, Breach of a Security Agreement, and Breach of the Covenant of Good Faith.  (Complaint, Doc. # 1.)  The Guarantors moved for summary judgment on June 9, 2010 arguing that it had no obligation to perform because KS did not satisfy a condition precedent to the Assignment.  (Mot. Summ. J. ("MSJ"), Doc. # 29.)   KS cross-moved for summary judgment on August 8, 2010. (Counter-Mot. Summ. J. ("CMSJ"), Doc. # 34.)  Also at issue in this case is IC's Motion for Joinder in the Guarantors' Motion for Summary Judgment that was filed on September 28, 2010.  (Mot. Joinder ("MJ"), Doc. # 52.)

For the following reasons, the Court **GRANTS** Island Cements Motion for Joinder in the Guarantors' Motion for Summary Judgment (Doc. # 52), **GRANTS** Kamehameha Schools' Motion for Summary Judgment (Doc. # 34), and **DENIES** the Defendants' Motion for Summary Judgment (Doc. # 29).

3

<u>BACKGROUND</u>

I.    <u>Factual Background</u>

The leased property at issue is located at 187 Silva Street, Hilo, Hawai'i ("the Property").  (Doc. # 34-1, Decl. Kirk Horiuchi ("Horiuchi") ¶ 5.)  KS initially acquired title to the property in June 1984 as a part of a real estate exchange with Hilo Transportation and Terminal, Inc ("HT&T").  (<u>Id.</u>; Doc. # 34-3, Decl. J. Alan Kugle ("Kugle") ¶ 5.)  KS has continuously owned the property since 1984.  (Doc. # 34-1, Horiuchi ¶ 4.)

On June 14, 1984, HT&T and KS signed Lease No. 27,380 ("the Lease"), with KS as lessor and HT&T as lessee.  (Doc. # 34-4, Ex. A.)  HT&T subsequently merged with Brewer which took on all obligations under the lease and guaranteed performance.  (Doc. # 34-5, Ex. B; Doc. # 34-6, Ex. C.)  The lease term is for 55 years, due to expire in 2039.  (Doc. # 34-4, Ex. A at 1.)

The Lease provides that the lessee, and its assigns, will pay rent, observe applicable laws, keep the property in good order and condition, as well as indemnify KS for all actions, suits, claims, loss, damages, and costs and expenses related to any nonbservance or nonperformance of the law and breach of the Lease covenants.  (<u>Id.</u> at  ¶¶ 7, 8, 9, 10, 16, 17.)  Paragraph 16 of the lease provides specifically that the Lessee "will indemnify and hold Lessors harmless from and

against all claims and demands for loss or damage, including property damage and 'will reimburse Lessors for all their costs and expenses including reasonable attorneys' fees." (<u>Id.</u> at ¶ 16.)

In March 2006, Brewer and KS had environmental consultants submit a series of Phase I and II Environmental Site Assessments ("ESAs").[1] (Doc. # 34-7, Ex. D; Doc. 34-8, Ex. E; Doc. 34-9, Ex. F; Doc. 34-10, Ex G, Doc. 34-11, Ex. H.)  The ESAs documented historical uses of the property and indicated that hazardous substances had been released or were a threat to be released on the Property.[2]  (<u>See id.</u>)  The Property was contaminated by the hazardous substances through 2009.  (<u>See</u> <u>id.</u>)  The Hawai'i Department of Health requested that KS, Brewer, and IC continue to test and sample to determine the extent of the pollution on the Property.  (Doc. # 34-3, Kugle ¶ 5.)  To comply with these environmental mandates, Brewer has incurred costs over $800,000 while KS has paid approximately $120,000.  (<u>Id.</u> at ¶¶ 22–23.)

---

[1]By this time, IC was already in possession of the premises as discussed *infra*.

[2]These substances, defined in CERCLA §§ 101(14), 102, included, but were not limited to: (1) lead (from paint, not gasoline); (2) solvents including volatile organic compounds; (3) asbestos containing materials; and (4) Petroleum hydrocarbons.  (Doc. # 34-7, Ex. D at 35; Doc. 34-8, Ex. E at 4,16; Doc. 34-9, Ex. F at 6, 12-13, 17-19; Doc. 34-10, Ex G at1-8, 23.)

On January 17, 2006, before the ESAs, Brewer entered into an agreement to assign the Lease to IC without the knowledge or consent of KS. (Doc. # 34-23, Ex. T; Doc. # 34-1 Horiuchi ¶ 7.)  IC occupied the property starting in January 2006 and remained on the premises until September 2008.  (Doc. # 34-1 Horiuchi ¶¶ 7–8.)  This 2006 assignment provided that Brewer would indemnify IC for any environmental contamination that existed at the time of the assignment. (Doc. # 34-23, Ex. T.)

IC was soon delinquent on the rent it owed Brewer and, in 2007, Brewer filed a state court action, J. Alan Kugle, et. al v. Island Cement LLC (Civil No. 3RD 7-1-080) (hereinafter "State Action"), against the Defendants.  (Doc. # 34-24, Ex. U, Recitals, ¶ 8.)  In April 2007, IC and Brewer reached a settlement agreement to end the State Action.  (Id.)

The 2007 Settlement Agreement is not at issue.  It acknowledged that IC owed Brewer over $420,000 in unpaid rent, late fees and attorneys' fees and costs.  (Id. at ¶¶ 5–6.)  It also provided that, in exchange for deferring the enforcement of a Writ of Possession and Judgment, IC would gradually pay its debt back to Brewer.  (Doc. # 34-24, Ex. U, Agreement, ¶ 3.)  The Agreement also stipulated:

       Concurrently with the execution of this Settlement Agreement, Island Cement will provide executed copies of the following documents to Brewer:

    A.     A Security Agreement . . . ;
    B.     A Stipulation for Issuance of Writ of Possession and Judgment for Possession . . . ;
    C.     An Assignment of Lease . . . ;
    D.     A Guaranty . . . .

(Id. at ¶ 1.)  Further, Island Cement agreed to "cooperate to obtain the consent of [KS] to the Assignment of Lease."  (Id. at ¶ 4.)  It also provided that "IC's obligations pursuant to the Assignment of Lease and the obligations of the guarantors under the Guaranty will continue and survive the dismissal of [the action]."  (Id. at ¶ 6.)  Finally, it voided the 2006 assignment of lease agreement between Brewer and IC.  (Id. at ¶ 10.)

       The Assignment of Lease, referenced in the Settlement Agreement, is at issue.  It provides that the Assignment is "[f]or and during the full unexpired term of the Lease."  (Doc. # 34-25, Ex. V at 3.)  In the Assignment, IC agreed to take the lease subject to "the observance and performance . . . of all covenants and conditions contained in the Lease."  (Id. at 2.)  The Assignment also stated that IC "does hereby promise, covenant and agree to and with the Assignor and to and with the Lessor under the Lease, *in consideration of the consent of the Lessor* to

the foregoing assignment, as follows." (Id. at 2–3 (emphasis added).)  The Lease

Assignment then lists four paragraphs, lettered (a) through (d), which, in substance,

provide that IC would: (a) indemnify Brewer for any unpaid rent; (b) indemnify

KS for all environmental contamination caused by IC; (c) indemnify Brewer for

environmental contamination that existed before the 1984 lease and; (d) indemnify

KS and Brewer from any environmental contamination caused by Brewer.  (Id. at

3–4.)  The Defendants here contend that KS's consent was a condition precedent to

the Assignment.

　　　　Also as a part of the 2007 agreement, the Guarantors signed a

Guaranty Agreement in which they personally guaranteed IC's performance of the

2007 Settlement Agreement and the Lease Assignment.  (Doc. # 34-26, Ex. W.)

Charles Harlan, as  Manager of IC, also signed a Security Agreement for the

benefit of Brewer as the "Secured Party." (Doc. # 34-27, Ex. X.)  IC granted

Brewer a security interest in furniture, fixtures, and equipments on the property.

(Id.)

　　　　KS did not provide its consent, as required, to the Assignment before

IC abandoned the premises in September 2008.  (See Doc. # 34-1, Horiuchi

¶¶ 7–10.)  KS has provided declarations stating that it withheld its consent because

IC refused to provide the necessary financial documentation required for consent.

(Id.)  To that end, KS has supplied correspondences in which its attorney repeatedly requested from IC documentation related to its financials in April and September of 2008.  (See Doc. # 41-6, Ex. AA.).  There is also some evidence that the financial documentation initially provided by IC to Brewer when it took possession in 2006 was incorrect.  (Id.)  The record is also clear that KS permitted IC to remain in possession of the Property despite the incomplete assignment. (Doc. # 34-1, Horiuchi ¶¶ 7–10.)

II.      Procedural History Relevant to the Instant Motion

On November 14, 2006, KS filed a Complaint against the Brewer Defendants in Trustees of the Estate of Bernice Pauahi Bishop v. Brewer Environmental Industries, LLC, et. al., Case 1:06-cv-00612-HG-LEK ("2006 action").  (CV 06-00612, Doc. # 1.)

On December 9, 2008, KS filed a Complaint against Island Cement and the Guarantors in Trustees of the Estate of Bernice Pauahi Bishop v. Island Cement, LLC, et. al., Case 1:08-cv-00588-HG-LEK ("2008 action").  (CV 08-00558, Doc. # 1.)

On February 6, 2009, the 2008 action was consolidated with the 2006 action ("consolidated 2008 action").  (CV 06-00612,  Doc. # 105.)

9

On May 14, 2010, the Honorable Helen Gillmor in the 2006 action granted in part and denied in part KS's Motion for Summary Judgment (CV 06-00612, Doc. # 194.) against Brewer and the Defendants and modified an earlier order.  (CV 06-00612, Doc. # 300.)

On July 29, 2010, Brewer filed the Complaint in the instant case against the Defendants.  (Doc. # 1.)

On January 27, 2010, the clerk's office entered a default judgment in the instant action against Defendant Rose Marie Ornellas Harlan, a member of IC and a Guarantor.  (Doc. # 25.)  The clerk's office also entered a default judgment against defendant Island Cement and Charles Lee Harlan.  (Docs. # 26, 27.)

On June 9, 2010, the Guarantors moved for summary judgment against all of Brewer's contract claims.  (Doc. # 29.)

On August 2, 2010, KS, as substitute Plaintiff for Brewer, opposed the Guarantors' motion for summary judgment and made a counter-motion for summary judgment.  (Doc. # 34.)

On August 4, 2010, KS and Brewer stipulated to have KS replace Brewer as Plaintiff in accordance with a settlement reached between them in the 2008 consolidated action.  (Doc. # 37.)

10

On August 9, 2010, the Guarantors filed their reply to KS's opposition to their motion for summary judgment as well as their opposition to KS's motion for summary judgment.  (Docs. # 40, 41.)

On September 20, 2010, KS replied to the Guarantor's motion for summary judgment.  (Doc. # 46.)  On the same day, the 2008 consolidated action was consolidated into the instant action.  (Doc. # 57; CV 06-00612, Doc. # 325.)

On September 21, 2010, Island Cement answered KS's complaint. (Doc. # 49).

On September 28, 2010, Island Cement filed a Motion for Joinder in the Guarantor's Motion for Summary Judgment.  (Doc. # 52.)

On October 1, 2010, this Court continued all pending motions before it and requested supplemental briefing on: 1) whether the first half of the Assignment, before the paragraphs lettered (a) through (d), constituted an enforceable contract and; 2) the rights and duties of the parties if the Assignment is held to be invalid.  (Doc. # 60.)

On October 12, 2010, the Guarantors filed supplemental briefing in response to this Court's October 1, 2010 order (Doc. # 63.), as did Island Cement and KS.  (Docs. # 64, 65.)

On October 26, 2010, this Court ordered further supplemental briefing as to whether: 1) Brewer agreed to the Assignment because there was no evidence it had signed it and; 2) the applicability of a line of California cases that suggests a lease clause restricting the lessee's right to sublease or assign by requiring consent is for the lessor's exclusive benefit only. (Doc. # 75.)

On November 2, 2010, KS filed its second supplemental briefing. (Doc. # 82.) Island Cement and the Guarantors did the same on November 9, 2010. (Docs. # 84, 85.)

## STANDARD OF REVIEW

Rule 56 requires summary judgment to be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Porter v. Cal. Dep't of Corr., 419 F.3d 885, 891 (9th Cir. 2005); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). A main purpose of summary judgment is to dispose of factually unsupported claims and defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial. See id. at

12

323.  A moving party without the ultimate burden of persuasion at trial—usually, but not always, the defendant—has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment.  Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).  The burden initially falls upon the moving party to identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).

Once the moving party has carried its burden under Rule 56, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial" and may not rely on the mere allegations in the pleadings.  Porter, 419 F.3d  at 891 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).  In setting forth "specific facts," the nonmoving party may not meet its burden on a summary judgment motion by making general references to evidence without page or line numbers.  S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003); Local Rule 56.1(f) ("When resolving motions for summary judgment, the court shall have no independent duty to search and consider any part of the court record not otherwise referenced in the separate concise statements of the parties.").  "[A]t least some 'significant probative evidence' " must be

13

produced.  T.W. Elec. Serv., 809 F.2d at 630  (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 290 (1968)).  "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact."  Addisu, 198 F.3d at 1134.  Further, the Ninth Circuit has "refused to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving' testimony."  Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002) (citing Kennedy v. Applause, Inc., 90 F.3d 1477, 1481 (9th Cir. 1996)).  "Conclusory allegations unsupported by factual data cannot defeat summary judgment."  Rivera v. Nat'l R.R. Passenger Corp., 331 F.3d 1074, 1078 (9th Cir. 2003).

When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact."  T.W. Elec. Serv., 809 F.2d at 631.  In other words, evidence and inferences must be construed in the light most favorable to the nonmoving party.  Porter, 419 F.3d at 891.  The court does not make credibility determinations or weigh conflicting evidence at the summary judgment stage.  Id.; see also Nelson v. City of Davis, 571 F.3d 924 (9th Cir. 2009) ("[C]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts

are jury functions, not those of a judge.") (citations omitted).  However, inferences

may be drawn from underlying facts not in dispute, as well as from disputed facts

that the judge is required

## DISCUSSION

I.    <u>Motion for Joinder</u>

As a preliminary matter this Court will address Island Cement's

Motion for Joinder in the Guarantors' Motion for Summary Judgment.  Per the

Federal Rules of Civil Procedure, a Federal Court must set a scheduling order that

"limits the time to join other parties, amend the pleadings, complete discovery, and

file motions."   Fed. R. Civ. P. 16(b)(3)(A).  Local Rule 7.9 of the United States

Hawai'i District Court states that "[e]xcept with leave of court based on good

cause, any substantive joinder in a motion or opposition must be filed and served

within seven (7) days of the filing of the motion or opposition joined in."

In the instant case, the Rule 16 Scheduling Order required all

dispositive motions to be filed by June 9, 2010.  (Doc. # 23.)  The Guarantors filed

their motion for summary judgment that day.  (Doc. # 29.)  Any substantive joinder

in a motion therefore had to be filed by June 16, 2010 or required leave of this

Court based upon a demonstration good cause.  Island Cement did not file its

joinder motion until September 29, 2010.

15

This Court, nonetheless, finds good cause to grant leave for IC to join in the Guarantor's motion for summary judgment.  Island Cement was a party in the 2008 consolidated action, which was subsequently consolidated into the instant action.  In consolidating the actions, all parties stipulated that "[t]he default taken against Island Cement will be lifted and Island Cement will be permitted to file an answer to the Complaint to preserve the defenses previously asserted . . . ."  (CV 06-00612, Doc. # 325.)  Further the same issues presented in the instant case were present in the 2008 consolidated action.  Island Cement is therefore not a stranger to the instant litigation and the issues presented.  It is also in the interest of judicial economy  to grant IC's Motion for Joinder in the Guarantor's Motion for Summary Judgment rather than have IC move this Court for summary judgment on the same issues here presented.  This result also keeps with the spirit of the parties stipulation when the cases were consolidated.

This Court is not persuaded by KS's argument that Mr. Albrechtson has no authority to represent Island Cement or file the instant motion on its behalf.  KS argues Mr. Albrechtson has no authority to file the instant motion because  Mr. Albrechtson has not spoken to a member of IC in six months.  Mr. Albrechtson, however, has represented IC since the inception of the 2008 action.  And while it is true that an attorney has the responsibility to keep its client well informed,

16

> [A] lawyer ordinarily cannot be expected to describe trial or
> negotiation strategy in detail.  The guiding principle is that the lawyer
> should fulfill reasonable client expectations for information consistent
> to act in the client's best interests, and the client's overall
> requirements as to the character of representation.

Hawai'i Rules of Prof'l Conduct R. 1.2 cmt. 2.  There is no indication here that Mr.

Albrechtson has not acted in his client's best interest or is not fulfilling his client's

reasonable expectations.

Finally KS argues that it is prejudiced by permitting IC to join in the

Guarantors' motion to dismiss because it has had no opportunity to raise or

respond to any claims against Island Cement.  This argument lacks merit.  First,

Island Cement is seeking joinder in the Guarantors' motion, not raising any new

arguments.  Second, the parties (including KS) stipulated that the default against

Island Cement would be vacated and that IC reserved the right to raise any

defenses in the instant action.  Third, *precisely* the same issues in the instant

motion for summary judgment would be presented in any separate motion for

summary judgment that IC might file.  Indeed, the Guarantors' liability is

predicated on the Guaranty Agreement, which guarantees *Island Cement* would not

violate the Settlement Agreement or Assignment of Lease.  KS has not and cannot

demonstrate how a cross motion against Island Cement would materially differ

from one against the Guarantors. For the foregoing reasons, this Court **GRANTS** Island Cement's Motion for Joinder in the Guarantor's Motion for Summary Judgment.

II.    Binding Precedent of Judge Gillmor's May 14, 2010 Order

    A.    The Order

As discussed in the procedural history, KS filed a complaint against Brewer in 2006 and against Island Cement in 2008. The actions were subsequently consolidated in front of the Honorable Helen Gillmor. (CV 06-00612, Doc. # 105.) Judge Gillmor issued an order in the consolidated 2008 action denying in part KS's motion for summary judgment on May 14, 2010 ("the Order"). (CV 06-00612, Doc. # 300.) That action was then consolidated into the instant action. (Doc. # 57.)

The issues presented to Judge Gillmor are similar to the issues here. KS, before Judge Gillmor, was seeking contribution and indemnification from the Defendants as a third party beneficiary to the Settlement Agreement. (Civ No. 06-00612, Doc. # 300.) As here, the Defendants argued that KS's approval of the Assignment was a condition precedent to IC's Assignment obligations and because KS never approved, their contractual duties were not triggered. (Id.)

Judge Gillmor agreed, in part, with the Defendants.  First, Judge Gillmor concluded that the Settlement Agreement itself was enforceable.  (Id.)  Turning next to the Assignment, the Court held that the provisions in the first half of the Assignment were binding, but KS's consent was a condition precedent to provisions (a) through (d) of the contract.  (Id.)  As a result the Defendants were: (1) liable for rents due under the Settlement Agreement; (2) required to indemnify Brewer for any environmental contamination caused *while in possession* of the property, and (3) responsible under CERCLA and HERL for any contamination it caused *while in possession* of the property.  (Id.)

B.     The Order's Effect on the Instant Action

The effect of the Order on the instant action is governed by the "law of the case doctrine."  The law of the case doctrine is a judicial invention designed to aid in the efficient operation of court affairs.  United States v. Thrasher, 483 F.3d 977, 981 (9th Cir. 2007) (citing Herrington v. County of Sonoma, 12 F.3d 901, 904 (9th Cir. 1993)).  Under the doctrine, a court is "generally precluded from reconsidering an issue previously decided by the same court[.]"  United States v. Lummi Indian Tribe, 235 F.3d 443, 452 (9th Cir. 2000).  For the doctrine to apply, the issue in question must have been "decided explicitly or by necessary implication in the previous disposition."  Id. (internal quotation and citation

19

omitted).  Application of the doctrine is discretionary and a trial judge's decision to apply the doctrine is thus reviewed for an abuse of discretion.  Id.

A court abuses its discretion in applying the law of the case if: "(1) the first decision was clearly erroneous; (2) an intervening change in the law occurred; (3) the evidence on remand was substantially different; (4) other changed circumstances exist; or (5) a manifest injustice would otherwise result."  Ingle v. Circuit City, 408 F.3d 592, 594 (9th Cir. 2005).   "Law of the case should not be applied woodenly in a way inconsistent with substantial justice."  United States v. Miller, 822 F.2d 828, 832-33 (9th Cir. 1987) (citing Moore v. Js. H. Matthews & Co., 682 F.2d 830, 833-34 (9th Cir. 1982)).

In reviewing the matter, the Court notes that while the issues faced by the Court are similar, the procedural posture is somewhat different.  Unlike before Judge Gillmor, KS here is a successor plaintiff to Brewer, not a third party beneficiary to the Settlement Agreement.  (Doc. 37.)  KS therefore has succeeded to Brewer's first party rights under the contract.

Further, this Court is not persuaded that the language requiring KS's consent is a condition precedent only to provisions (a) through (d).  As discussed, the sixth paragraph of the Assignment states that Island Cement "does hereby promise, covenant and agree to and with [Brewer] and to and with [KS] under the

20

Lease, in consideration of the consent of [KS] to the *foregoing* assignment, as follows." (Doc. # 34-25, Ex. V at 2 (emphasis added).) It is clear that to the extent KS's consent was a condition precedent, it applied to the Assignment as described from paragraphs *one* through *five*, not those that follow paragraph six. The following paragraphs, lettered (a) through (d), described further terms of the Assignment. Thus, if KS's consent was a condition precedent, it applied to the entire Assignment, rather than just paragraphs (a) through (d). See Found. Int'l, Inc. v. E.T. Ige Const., Inc., 78 P.3d 23, 30-31 (Haw. 2003) ("Absent an ambiguity, contract terms should be interpreted according to their plain, ordinary, and accepted sense in common speech." (modifications and quotations omitted)). For the foregoing reasons, this Court declines to apply the "law of the case doctrine" with respect to the part of Judge Gillmor's Order finding that KS's consent was a condition precedent to only paragraphs (a) through (d) of the Assignment.[3]

---

[3]Nor will this Court apply the law of the case doctrine to the Order's finding that equity prevents KS from recovering from the Guarantors under the Assignment. This Court *will* apply, however, the doctrine to the rest of the Order, including the finding that the Settlement Agreement *is* a binding agreement.

III.    The Assignment of Lease

    A.    Contract Interpretation Standard

"[A]s a general rule, the construction and legal effect to be given a contract is a question of law." Id.  Without an ambiguity, contract terms should be interpreted according to the their plain, ordinary, and accepted meaning.  See id.; State Farm Fire and Cas. Co., 978 P.2d 753, 762 (Haw. 1999) ("[C]ontractual terms should be interpreted according to their plain, ordinary meaning and accepted use in common speech. The court should look no further than the four corners of the document to determine whether an ambiguity exists."). Additionally, the Ninth Circuit has stated that a

> written contract must be read as a whole and every part interpreted with reference to the whole, with preference given to reasonable interpretations.  Contract terms are to be given their ordinary meaning and when the terms of the contract are clear, the intent of the parties must be ascertained from the contract itself.  Whenever possible, the plain language of the contract should be considered first.

 Flores v. Am. Seafoods Co., 335 F.3d 904, 910 (9th Cir. 2003).  Therefore "courts should not draw inferences from a contract regarding the parties' intent when the contract is definite and unambiguous." State Farm Fire and Cas. Co., 978 P.2d at 762.

B.    The Condition Precedent

"A condition precedent is a condition or event which must be performed or must happen before liability arises on the promise for which the condition qualifies, or it is one which must be fulfilled before there is a right to performance." Stevens v. Cliffs at Princeville Assoc., 684 P.2d 965, 696 (Haw. 1984). "If the condition is not fulfilled, the right to enforce the contract does not come into existence." Id. "The existence of a condition precedent normally depends upon the intent of the parties as determined from the words they have employed in the contract." Realmuto v. Gagnard, 1 Cal. Rptr. 3d 569, 573 (Cal. Ct. App. 2003).

A party cannot, however, evade its contractual responsibilities by creating the circumstances it seeks to use as its excuse. Indeed,

> it is well recognized that no person should profit by his or her own wrong. The principle is expressed in the rule that no person can defend against contractual liability on grounds of a condition precedent when he or she is responsible for that condition precedent not being complied with.

Kalinowski v. Yeh, 847 P.2d 673, 677 (Haw. Ct. App. 1993); see also Kahili, Inc. v. Yamamoto, 506 P.2d 9, 12 (Haw. 1971) ("The general rule is that where a person by his own act makes impossible the performance or the happening of a condition such nonperformance should not relieve him from his obligation under a

23

contract.")  Therefore, no one "can avail himself of the non-performance of a condition precedent, who has himself occasioned its non-performance." <u>Yamamoto</u>, 506 P.2d at 12.

In <u>Yamamoto</u>, Frank Yamamoto was the sublessee on a sublease and Bishop Trust Co., Ltd. was the sublessor.  <u>Id.</u>  Yamamoto granted Clarence Lee and David Lyum an option to purchase the sublease.  <u>Id.</u>  Lee and Lyum subsequently transferred the option to Kahili, Inc. and, as principals of Kahili, exercised the option.  <u>Id.</u>  Bishop Trust Co., Ltd., however, refused to consent to the assignment because it was a "thin" corporation and Lee and Lyum had refused to guaranty the terms and conditions of the sublease.  <u>Id.</u>  Kahili sought recourse with Yamamoto for breach of the option agreement which provided "that should the option or . . . be unable to obtain the consent . . . of the sublessors, [Kahili] is entitled to refund of moneys paid or expended."  <u>Id.</u> at 10-11.

The <u>Yamamoto</u> Court, looking at the facts stated

> [t]here [was] no question that the inadequate capitalization of Kahili, Inc. and the refusal on the part of Lee and Lyum to become personally responsible for the performance of the terms of the sublease were the reasons upon which Bishop Trust Co. based the denial of its consent to the assignment of sublease.

Id.  The court then discussed Bishop Trust Co.'s conduct and stated that "[t]he refusal . . . to consent to the assignment of sublease to Kahili . . . was reasonable and should be regarded as good business practice on the part of any lessor."  Id. at 12.

Kahili, Inc. and Lee and Lyum, therefore, "knew or should have known that no responsible lessor or agent of a lessor would consent to assignment of sublease without the endorsement of responsible individuals."  Id. at 12.  Thus, the Court concluded, "it must be deemed that Kahili, Inc. made the securing of Bishop Trust Co's consent to the assignment of the sublease impossible, and it should not be entitled to relief based on the Yamamoto's failure to obtain such consent."  Id. at 12-13

Applying these principles to the instant case, it is clear that the Defendants cannot use KS's refusal to approve of the sublease to absolve their liabilities under the contract.  First, it is a close case whether KS's consent was a condition precedent to the Assignment of Lease.  KS argues persuasively that a valid contract, supported by consideration was formed irrespective of whether KS provided its consent.  The Defendants argue that a plain reading of the Assignment can lead to no other conclusion than that KS's assignment was a condition precedent to the Assignment.  While the Court is inclined to agree with the

Defendants, it need not reach that issue because even if KS's consent is a condition

precedent, the Defendants cannot "avail [themselves] of the non-performance of a

condition precedent, after occasion[ing] its non-performance." Yamamoto, 506

P.2d at 12.

    The record is replete with undisputed[4] instances of KS requesting

financial documents from both IC and the Guarantors.  To begin, Mr. Horiuchi, in

his declaration, stated that KS was "ready and willing to consent to the Assignment

if IC and the Guarantors provided financial documents and information to enable

[KS] to ensure that IC had the financial ability to assume the lease."  (Doc. # 34-1,

Horiuchi ¶ 10.)  "Without this information," Mr. Horiuchi continued, "[KS] was

unable to provide formal written consent to the Lease." (Id. at ¶ 11.)  This

declaration alone would not have convinced this Court that KS was willing to

consent to the transfer, but KS has provided further documentation that

substantiates his assertions.

    In a series of correspondences between an attorney for KS, Ms.

Deborah Macer Chun, and an attorney for Brewer, Ms. Chun made clear that

financials from the Defendants were required for approval.  On April, 14, 2008, for

---

[4]Defendants have provided no documentation contesting their unwillingness
to assist KS in approving the Assignment.

example. Ms. Chun stated that KS "will need updated financial before we go for

formal approval with trustees." (Doc. # 41-6, Ex. AA.)   Ms. Chun, on that same

day, also reached out to counsel for IC and requested financial documents "with

respect to IC and/or the guarantors." (Id.)  Ms. Chun was requesting these

documents because

> [o]n December 20, 2007, KS received an Island Cement Balance
> Sheet as of 12/19/07 . . . .  At that time, *KS requested updated*
> *financial statements* for the personal guarantors as well as an updated
> business plan or at least updated financial projections.  *Nothing*
> *further has been submitted.*

(Id. (emphasis added))

> Indeed, months later, on September 8, 2010, Counsel for IC, in

response to one of Ms. Chun's inquiries, stated that

> my clients' members are *very reluctant to provide personal*
> *guarantees* for obligations that involve EPA liabilities, and *a couple*
> *have flat out said no way* . . . .  I have asked my clients' members for
> financial records.  Since they have voiced concerns over this, we have
> a scheduled a member meeting . . . .

(Id. (emphasis added))  In response, Ms. Chun reiterated that "KS will require

guarantees of all obligations under the lease, including the environmental

obligations." (Id.)  Two days later, after the member meeting, counsel for IC stated

that Ms. Chun "should anticipate asking [KS] to consent to the assignment

without personal guarantors." (Id.)  Ms. Chun replied again that "KS needs the updated financials on [the Guarantors] to make the final determination." (Id.)

In light of these facts it is clear that the Defendants cannot use KS's lack of consent to the Assignment as a means of avoiding contractual liability. As noted, "no person can defend against contractual liability on grounds of a condition precedent when he or she is responsible for that condition precedent not being complied with." Kalinowski v. Yeh, 847 P.2d at 677.  As in Yamamoto, KS here tried to obtain the requisite financials from both IC and the Guarantors before approving an assignment of lease.  Like Yamamoto, the Defendants did not provide such documentation.[5]  KS made clear that such documentation would be required for approval and still the Defendants did not relent.  "The refusal . . . to consent to the assignment . . . was [therefore] reasonable." Yamamoto, 506 P.2d at 12.  Thus, "it must be deemed that [the Defendants] made the securing of [KS's] consent to the assignment . . . impossible, and [the Defendants] should not be entitled to relief based on the . . . failure to obtain such consent." Id. at 12-13.

---

[5]Indeed the Defendants were not cooperative in obtaining KS's consent as *required* by the Settlement Agreement, which stated that "Island Cement will cooperate to obtain the consent of [KS] to the Assignment of Lease." (Doc. 34-24, Ex. U.)  The Defendants, therefore, cannot use KS's lack of consent to obviate their duties *a fortiori*.

The Defendants are therefore liable under the Assignment of Lease,

notwithstanding KS's lack of consent.[6]

C.    <u>Brewer's Alleged Failure to Sign the Assignment</u>

On October 26, 2010, this Court asked for supplemental briefing on

whether Brewer's alleged failure to sign the assignment rendered it unenforceable.

Specifically this Court requested:

> At the hearing, Counsel for the Guarantors, Gary W. Vancil, raised a
> question regarding whether the Assignment contains a "badge of
> validity," because the documents before the Court do not evidence
> that the Assignment was signed by Brewer.  The Court requests
> supplemental information on whether or not the contract has, in fact,
> been signed or entered into by Brewer.

(Doc. 75.)  This Court also stated, "Regardless of the relationship between the

Agreements, in order to have a binding effect [on] the parties, the Assignment must

be a valid contract in its own right."  (<u>Id.</u>)  This Court was concerned that the

contract was not valid because of KS's failure to consent to the Assignment.  (<u>Id.</u>)

Having now concluded that KS's failure to consent to the Assignment does not

excuse the Defendants from the contract, this Court must address whether Brewer's

failure to sign the Assignment precludes its enforcement.

---

[6]This Court is aware that it asked for supplemental briefing on whether a
California line of cases related to a lessor withholding consent is applicable to the
instant case.  In light of the foregoing, this Court declines to reach that issue.

If a contract makes clear reference to a document, the parties may contract to incorporate terms by reference to a separate document, even one to which they are not parties, and even if the document is unsigned.  11 Williston on Contracts, § 30:25 (4th ed. 1999 & Supp. 2010).  When a writing refers to another document, that document becomes constructively part of the writing.  Id. "Incorporation by reference makes the subject matter referred to as much a part of that which incorporates it as though set forth therein at full length."  State v. Hawaiian Dredging Co., 397 P.2d 593, 606 (Haw. 1964); see Cunha v. Ward Foods, Inc., 804 F.2d 1418, 1428 (9th Cir. 1986) ("When a document incorporates outside material by reference, the subject matter to which it refers becomes a part of the incorporating document just as if it were set out in full.").

Here the Settlement Agreement explicitly referenced the Assignment of Lease.  Specifically, the Agreement states that "Brewer and Island Cement agree [that] [c]oncurrently with the execution of this Settlement Agreement, Island Cement will provide executed copies of . . . [the] Assignment of Lease, in the form attached as Exhibit 3."  (Doc. # 34-24, Ex. U, Agreement, ¶ 1.)  Indeed this was one of ten agreements included in the Settlement Agreement.  (Id. at ¶¶ 1–10.)

As noted supra, this Court adopts and applies the law of the case doctrine to Judge Gillmor's Order with respect to her decision that the Settlement

Agreement was a valid and binding contract between Brewer and IC.  This Court now finds that the Assignment of Lease was incorporated into and made a part of that Settlement Agreement.  While it is true the agreement does not explicitly state that the Assignment of Lease was incorporated by reference, it was explicitly referenced in the Settlement.  Further, by the plain terms of the Settlement Agreement, the Assignment was necessarily incorporated into and made a part of the Settlement.  Island Cement's execution of the Assignment was a part of the bargained for exchange whereby Brewer agreed to terminate the State Action proceedings; there was a mutuality of ascent between the two parties on the Assignment in the Settlement Agreement.  Arguing otherwise overlooks the critical role the Assignment played in procuring the Settlement Agreement.

Therefore, given that the Settlement Agreement was a valid and binding contract between the parties and that the Assignment was necessarily incorporated by reference to the Settlement Agreement, Brewer's failure to sign the Assignment is immaterial; it had already executed the Settlement Agreement.  See Hawaiian Dredging Co., 397 P.2d at 606 ("Incorporation by reference makes the subject matter referred to as much a part of that which incorporates it as though set forth therein at full length."); Williston, supra, § 30:25 (noting that a document incorporated by reference need not be signed).

31

The Guarantors' argument that the Settlement Agreement violated the statute of frauds is without merit.  The Hawai'i Statute of Frauds requires the signature of the party against whom enforcement is sought for a transfer of interest in land that endures for more than one year.  See Haw. Rev. Stat. § 656-1.  Here enforcement is sought against Island Cement and it executed the Assignment on April 2, 2007.  (Doc. # 34-25, Ex. V.)  KS, as successor to Brewer in the instant action, need not demonstrate Brewer signed the document to satisfy the Hawai'i Statute of Frauds.  In any event, as noted above, Brewer executed the Settlement Agreement, which incorporated by reference the Assignment of Lease.

The Defendants also argue that Brewer imposed its own condition precedent on the Assignment by withholding its signature.  Given that Brewer executed the Settlement Agreement and the Assignment was incorporated by reference, this argument also lacks merit.  Even assuming *arguendo* that by failing to execute the settlement Brewer unlawfully created a condition precedent, that condition, *i.e.* KS's consent, is the same condition precedent that the Defendants contend the Assignment created on its face.  Therefore Brewer created no additional condition by withholding its signature that undermined the mutuality of ascent to the Settlement and Assignment.  For the foregoing reasons, this Court

32

finds that the alleged failure of Brewer to execute the Assignment does not

preclude its enforcement against the Defendants.

IV.   Summary Judgment on the Claims for Relief

Having concluded that the Assignment was enforceable against the

Defendants, this Court will address whether either side is entitled to summary

judgment.  This Court begins by noting that to the extent Defendants' motion for

summary judgment was predicated on the inapplicability of paragraphs (a) through

(d) of the Assignment, it is **DENIED**.  The Court will now address each claim in

turn.

A.   Breach of Contract

In the Assignment, IC promised to observe and perform all of

Brewer's obligations under the Lease.  (Doc. # 34-25, Ex. V at 2.)  IC also

promised to hold harmless KS "from any loss, damages, cost, expenses or liability"

arising out of or attributable to a violation of the Lease, including liability for prior

existing and future environmental contamination.  (Id. at 3.)  Island Cement further

agreed to relieve Brewer for any loss, damages, costs, expenses or liability under

the Lease for prior, existing, and future environmental damages.  (Id.)  Further, the

Guaranty Agreement warrants that the Guarantors "absolutely and

unconditionally" guarantee and promise the full performance of Island Cement.

33

(Doc. # 34-26, Ex. W.)  Finally, the Security Agreement created a secured interest in "all furniture, fixtures, equipment, inventory and goods of [IC] now or hereafter owned by [IC]."  (Doc. # 34-27, Ex. X § 1.)  In light of the foregoing discussion, this Court concludes there is no genuine issue of material fact surrounding the validity and applicability of the Settlement Agreement, Assignment of Lease, Guaranty Agreement, and Security Agreement against the Defendants *in to to*.  KS is entitled to judgment as a matter of law on Count I of the Complaint.  Therefore, KS's Motion for Summary Judgment on Count I of the Complaint is **GRANTED** and the Defendants' motion on Count I of the Complaint is **DENIED**.

      B.    <u>Indemnification and Contribution per the Agreements and Lease</u>

      Per Hawai'i law, indemnification provisions are strictly construed and must clearly and unequivocally assume liability.  <u>Espaniola v. Cawdrey Mars Joint Venture</u>, 707 P.2d 365, 369 (Haw. 1985); <u>City and County of Honolulu v. Churchill</u>, 167 F. Supp. 2d 1143, 1151 (D. Haw. 2000) ("Hawaii state law requires indemnity clauses . . . to be strictly construed and have a clear and unequivocal statement of intent.").

      Here the Lease and Assignment have a "clear and unequivocal statement of intent."  The Guaranty provision here stated that

Guarantor[s] hereby absolutely and unconditionally guarantees and

34

> promises to Brewer the due, punctual and full performance by Island Cement of each and all of the covenants, obligation, liabilities and promises of Island Cement under the Agreement, the Assignment, and upon consent from [KS], the Lease, with the intent that the liability of Guarantor hereunder shall be the same as if Guarantor were named as Island Cement in the Agreement, Lease and Assignment during the Guaranty Term.

(Doc. 34-26, Ex. W at 2.)  The Guarantors clearly intended to guaranty IC's performance under the Agreement and Assignment.

Nor is the Guarantors' argument that it was not on notice of the environmental issues on the Property persuasive.  Under the Guaranty Agreement, the Guarantors waived and agreed to "not assert or take any advantage of any right or defense based on the absence of any or all . . . notices . . . ."  (Id.)  The Guarantors are bound by the terms of the Guaranty Agreement and cannot now raise a notice defense to preclude its enforcement.

Therefore, in light of the fact that the Agreement and the Assignment are enforceable in their entirety against the Defendants, this Court finds no genuine issue of material fact surrounding the Guarantors' indemnification liability under the Guaranty Agreement.  KS is entitled to judgment as a matter of law on Count II of the complaint.  Thus, KS's motion for summary judgment on

Count II of the Complaint is **GRANTED** and the Defendants' motion on Count II of the Complaint is **DENIED**.

      C.     <u>Indemnification and Contribution per CERCLA and HERL</u>

CERCLA allows for indemnification agreements between parties.  42 U.S.C. § 9607(e)(1) ("Nothing in this subsection shall bar any agreement to insure, hold harmless, or indemnify a party to such agreement for any liability under this section.").  CERCLA also allows recovery of "any other necessary costs of response incurred by any [non-governmental] person consistent with the national contingency plan."  42 U.S.C. § 6907(a)(4)(B).  Response is defined in CERCLA as "remove, removal, remedy, and remedial action;, all such terms (including the terms "removal" and "remedial action") include enforcement activities related thereto."  <u>Id.</u> at § 6901(25).  Remove and removal mean "the clean up or removal of released hazardous substances from the environment [including] such actions as may be necessary to monitor, assess, and evaluate the release or threat of release of hazardous substances."  <u>Id.</u> at § 6901(25).  Thus "costs" as contemplated by § 6907(a)(4)(B) can include the cost of "monitoring, assessing, and evaluating the release or threat of release of hazardous substances."  <u>Id.</u> at § 6901(25).

36

HERL, like CERCLA, allows parties to allocate indemnification costs between them.  Haw. Rev. Stat. § 128D-6(g).  HERL also allows for recoverable costs for "remedial or removal action" Id. at § 128D-5.

These are precisely the costs that Brewer and KS have incurred.  (See Doc. # 34-2, Decl. Jack Bennet.)  KS and Brewer retained an environmental consultant to prepare the ESAs.  (Id. at ¶¶ 8-10.)  The ESAs concluded there was a threat of hazardous substances being released onto the property.  (Doc. # 34-7, Ex. D at 35; Doc. 34-8, Ex. E at 4,16; Doc. 34-9, Ex. F at 6, 12-13, 17-19; Doc. 34-10, Ex G at1-8, 23.)  KS and Brewer incurred significant costs in preparing these ESAs and complying with the Department of Healths requests to monitor the Property.  Because the Assignment of Lease provided that IC (and through the Guaranty Agreement, the Guarantors) would indemnify KS and Brewer for all past, present, and future environmental liability, this Court finds no genuine issue of material fact as to Count III of the Complaint and KS is entitled to judgement as a matter of law.  Therefore, KS's motion for summary judgment on Count III of the Complaint is **GRANTED** and the Defendants' motion on Count III of the Complaint is **DENIED**.

D.    <u>Unjust Enrichment</u>

To prevail on an unjust enrichment claim a plaintiff need demonstrate (1) the plaintiff "conferred a benefit upon defendant" and (2) unjust retention of that benefit.  <u>See Small v. Badenhop</u>, 701 P.2d 647, 654 (Haw. 1985).

The undisputed facts demonstrate that the KS conferred a benefit upon the Defendants.  KS and Brewer allowed Brewer to maintain possession of the Property and assigned the full remainder of the lease to the Defendants.  The facts also demonstrate that allowing the Defendants the retention of that benefit would be unjust.  Brewer detrimentally relied upon the Defendants' promises in the Settlement and Assignment to absolve Brewer and KS of all environmental liability.  Despite this, KS and Brewer have incurred significant environmental costs.  Permitting the Defendants to retain the benefits of occupying the Property from 2006 to 2008 without indemnifying KS and Brewer as required by the agreement would therefore be unjust.

Thus, this Court finds no genuine issue of material fact as to Count IV of the Complaint and KS is entitled to judgement as a matter of law.  Therefore, KS's motion for summary judgment on Count IV of the Complaint is **GRANTED** and the Defendants' motion on Count IV of the Complaint is **DENIED**.

38

E.     Security Agreement

Counts V and VI of the Complaint request seek relief under the Security Agreement.  To create a valid and enforceable security agreement, the agreement must provide the name of the debtor and secured party, sufficiently describe the collateral, and be signed by the debtor if the collateral is not in the possession of the secured party.  See Haw. Rev. Stat. §§ 490:0-101 (comments), 490:9-203; 490:9-108.  Further, "[a]fter default, a secured party has the rights and remedies provided in this part and . . . those provided by [the security] agreement."  Id. at § 490:9-601(a)(1).

Here there is no genuine issue of material fact relating to validity of the  Security Agreement.  It provides the name of the debtor and secured party, sufficiently describes the collateral and is signed by the debtor.  KS is entitled to relief under the agreement and judgment as a matter of law.  Therefore, KS's motion for summary judgment on Counts V and VI of the Complaint is **GRANTED** and the Defendants' motion on Count V and VI of the Complaint is **DENIED**.

F.     Breach of Covenant of Good Faith

In Hawai'i commercial contracts are subject to a statutory duty to perform in good faith.  Haw. Rev. Stat. § 490:1-304.  Further, Hawai'i law

39

recognizes that "every contract contains an implied covenant of good faith and fair dealing that neither party will do anything that will deprive the other of the benefits of the agreement."  Best Place, Inc. v. Penn Am. Ins. Co., 920 P.2d 334, 337–38 (Haw. 1996) (citations omitted).

Once more, KS is entitled to judgment as a matter of law.  The Defendants, by repudiating and breaching their obligations per the agreement, deprived KS and Brewer of the benefits of the agreement.  Rather than indemnify KS and Brewer for their environmental liability, as they were contractually bound, they refused and abandoned the premises.  In doing so, the Defendants left KS and Brewer to pay for the environmental liability, despite explicitly agreeing to do so in the Settlement, Assignment, and Guaranty Agreement.  There is no genuine issue of material fact as to Count VII of the Complaint and KS is entitled to judgment as a matter of law.  Therefore, KS's motion for summary judgment on Count VII of the Complaint is **GRANTED** and the Defendants' motion on Count VII of the Complaint is **DENIED**.

Although this Court has decided to **GRANT** Plaintiff's motion for summary judgment in its entirety, it does not address the extent of damages to which KS is entitled because the extent of its damages did not relate to the merits

of the motion for summary judgment.  KS is hereby directed to file a separate

motion for damages.

CONCLUSION

For the reasons stated above, the Court **GRANTS** Island Cements

Motion for Joinder in the Guarantors' Motion for Summary Judgment (Doc. # 52),

**GRANTS** Kamehameha Schools's Motion for Summary Judgment (Doc. # 34),

and **DENIES** the Defendants' Motion for Summary Judgment (Doc. # 29).

IT IS SO ORDERED.

DATED:  Honolulu, Hawai`i, November 30, 2010.



_____
David Alan Ezra
United States District Judge

J. Alan Kugle, et al., vs. Island Cement, LCC, et al., Civil No. 09-00351 DAE-
BMK; ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT AND GRANTING PLAINTIFFS' COUNTER-MOTION FOR
SUMMARY JUDGMENT